1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

2

3  ------------------------------------X
                            :

4  UNITED STATES OF AMERICA     :  08-CR-186 (JBW)

5           v.          :
                          :  Brooklyn, New York

6  v,                   :  November 6, 2012
                          :

7  ESTEBAN RODRIGUEZ-OLIVERA,   :
                          :

8             Defendant.    :
  ------------------------------------X

9

10         TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
        BEFORE THE HONORABLE VIKTOR V. POHORELSKY

11          UNITED STATES MAGISTRATE JUDGE

12
  APPEARANCES:

13

14  For the Government:      United States Attorneys Office
                      BY: WALTER M. NORKIN, ESQ.

15                    Assistant United States Attorney
                    271 Cadman Plaza East

16                    Brooklyn, New York  11201

17  For the Defendant:       EDWARD S. PANZER, ESQ.
                      GEORGE L. SANTANGELO, ESQ.

18                    Edward S. Panzer
                    111 Broadway
                    Suite 1706

19                    New York, New York 10006

20  Court Interpreter:       MARIO MICHELENA
                      2 Washington Square Village 2S

21                    New York, New York 10012

22

23  Court Transcriber:       LISA M. SMITH
                      TypeWrite Word Processing Service
                    211 N. Milton Road

24                    Saratoga Springs, New York  12866

25

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK: Criminal cause for a guilty plea,

2   CR-08-136, and it's CR-12-523, <u>United States of America against</u>

3   <u>Esteban Rodriguez-Olivera</u>.

4          Counsel, please state your appearances for the

5   record.

6          MR. NORKIN: Walter Norkin.  Good afternoon,

7   Your Honor.

8          MR. PANZER: Good afternoon, Your Honor.  Edward S.

9   Panzer and George Santangelo for the Defendant Rodriguez.

10          THE COURT: Good afternoon.

11          MR. PANZER: Good afternoon.

12          THE COURT: The Court notes that Mr. Rodriguez is

13   receiving the assistance of an interpreter.  I presume a

14   Spanish interpreter, is that correct?

15          MR. MICHELENA: Yes, Your Honor.

16          THE COURT: I will ask you to please identify yourself

17   for the record and my clerk will administer an oath for you to

18   take.

19          MR. MICHELENA: Federally certified Spanish

20   interpreter Mario Michelena.

21   (AT THIS TIME, THE INTERPRETER, MARIO MICHELENA, WAS SWORN.)

22          THE CLERK: Thank you.

23          MR. MICHELENA: You're welcome.

24          THE COURT: I understand that Mr. Rodriguez is

25   prepared to plead guilty to charges contained in two

3

1    indictments, one returned here in the Eastern District of New

2    York and one that was returned in the District of Columbia.

3              In looking at the indictments, they appear to me to

4    be -- to charge essentially the same offense.  Am I overlooking

5    something, Mr. Norkin?

6              MR. NORKIN: No, Your Honor.  They do charge the same

7    offense.  There's a second component to the D.C. charge, which

8    involves Section 959, extraterritorial jurisdiction for actions

9    that occurred abroad and narcotics that were seized abroad, and

10   so the venue is slightly different.

11             Whereas the Eastern District of New York charge

12   specifically addresses the narcotics that made it to the

13   Eastern District of New York.

14             THE COURT: I see.

15             MR. NORKIN: But it is for -- as far as the allocation

16   and the penalties and the statutory maximums and minimums,

17   those are the same for both charges.

18             THE COURT: I see.  So the 959 charge, Title 21

19   Section 959 charge relates to distribution of controlled

20   substances that occurs outside of the United States but with

21   the understanding that those substances would then be -- find

22   their way into the United States?

23             MR. NORKIN: That's correct, Your Honor.

24             MR. PANZER: Or a conspiracy to do the same.

25             THE COURT: Or a conspiracy, yes.  Thank you.  All

4

1   right.  So Mr. Rodriguez, I'm told that you are prepared to

2   plead guilty to criminal offenses.  The decision to do that is

3   a serious decision and the Court has to be satisfied that you

4   understand the rights that you are giving up by pleading

5   guilty, as well as the consequences that may occur once you

6   plead guilty.

7        I'll discuss those matters with you today, and I'll

8   be asking you questions.  The answers to the questions have to

9   be given under oath.  So my law clerk now will administer and

10  oath for you to take.

11  (AT THIS TIME, THE DEFENDANT, ESTEBAN RODRIGUEZ-OLIVERA, WAS

12  SWORN.)

13        THE CLERK: Please state your name for the record.

14        THE DEFENDANT: Esteban Rodriguez-Olivera.

15        THE CLERK: Thank you.  You may be seated.

16        THE COURT: How does Mr. Rodriguez prefer to be

17  addressed, as Mr. Rodriguez-Olivera or simply Rodriguez?

18        THE DEFENDANT: Any way Your Honor prefers.

19        THE COURT: All right.  I'll address you as

20  Mr. Rodriguez.  Mr. Rodriguez, you've now taken an oath to tell

21  the truth, and that means you must do so.  If you should lie or

22  intentionally mislead the court, you could be prosecuted for

23  the crime of perjury or the crime of making false statements.

24  Do you understand that?

25        THE DEFENDANT: Yes.

1          THE COURT: If there's anything you do not understand

2    in the proceeding today, please tell me.  I will be happy to

3    clarify anything that you do not completely understand.  Do you

4    understand that?

5          THE DEFENDANT: Yes.

6          THE COURT: How old are you?

7          THE DEFENDANT: I'll be 48 on December 19th.

8          THE COURT: How far did you go in school?

9          THE DEFENDANT: 6th grade of elementary school at a

10   rural school.

11         THE COURT: Have you had any difficulty understanding

12   what your attorneys have explained to you about the case and

13   about your rights as you face these charges?

14         THE DEFENDANT: No, they explained to me very well.

15         THE COURT: Mr. Panzer, in your conversations with

16   Mr. Rodriguez, were you satisfied that he understand -- that he

17   understood what you were explaining to him?

18         MR. PANZER: Yes.  We've had many conversations and --

19         THE COURT: Did you communicate with him directly or

20   through an interpreter?

21         MR. PANZER: Always communicated to him, most of the

22   time, through an interpreter.  Once in a while I'd use an

23   American phrase, but I was satisfied that he understood what I

24   was saying and I understood what he was saying to the

25   interpreter.

6

1          THE COURT: Thank you.  Mr. Rodriguez, are you now or

2  were you recently under the care of a doctor or a psychiatrist

3  for any reason?

4          THE DEFENDANT: No.

5          THE COURT: In the last 24 hours, did you take any

6  pills or drugs or medications of any kind?

7          THE DEFENDANT: No.

8          THE COURT: I know it's not likely, but in the last 24

9  hours, did you take -- did you have any alcoholic beverage to

10  drink?

11          THE DEFENDANT: No.

12          THE COURT: Have you ever been hospitalized or

13  otherwise treated for narcotics addiction or any other kind of

14  substance abuse problem?

15          THE DEFENDANT: I have been clear -- rehabilitated

16  since 2003.

17          THE COURT: All right.  Is your mind clear now as you

18  sit here?

19          THE DEFENDANT: Yes.

20          THE COURT: Mr. Panzer, I presume that you've

21  discussed with Mr. Rodriguez the question of entering a guilty

22  plea?

23          MR. PANZER: We have.

24          THE COURT: In your view, does he understand the

25  rights that he'll be waiving by pleading guilty?

1          MR. PANZER: Yes, we've done it at least twice.

2          THE COURT: But are you satisfied he understands --

3     that he understands the right he'll be giving up by doing this?

4          MR. PANZER: Sure.  Yes, we are, Your Honor.

5          THE COURT: Do you have any question about his

6     competency to proceed today?

7          MR. PANZER: I have no question about his competency

8     and I have no reason to believe that he didn't understand what

9     I was saying.

10         THE COURT: All right.  Were you appointed or were you

11    retained?

12         MR. PANZER: We were retained.

13         THE COURT: Mr. Rodriguez, are you satisfied with the

14    assistance that you've received from your attorneys thus far in

15    this case?

16         THE DEFENDANT: Yes.

17         THE COURT: Do you feel that you need any more time to

18    discuss with them the decision to plead guilty before we

19    proceed further today?

20         THE DEFENDANT: No, that's fine.

21         THE COURT: Now this case is assigned now to Judge

22    Weinstein, who's a different judge.  He is the judge who will

23    sentence you if you plead guilty.  He is the judge who will

24    make the final decision about whether to accept your pleas of

25    guilty to the offenses.

8

1           If you wish, you have the absolute right to have

2   Judge Weinstein actually listen to your plea, and if you chose

3   to have him listen to the plea instead of me, you could suffer

4   not prejudice, no harm, no adverse consequence of any kind.  Do

5   you understand that?

6           THE DEFENDANT: Yes.

7           THE COURT: You can, on the other hand, give up your

8   right to have Judge Weinstein listen to the plea and permit me

9   to listen to the plea.  If you do that, a recording is being

10  made now which will be transcribed by a court reporter, and

11  Judge Weinstein will review that transcript so that he can make

12  the final decision about whether to accept your plea of guilty,

13  and he'll review the transcript in connection with the

14  sentencing, as well.

15          I have a document here that appears to be signed by

16  you which indicates that you are willing to give up your right

17  to have Judge Weinstein listen to the plea and permit me to

18  listen to the plea.  Let me ask you first if that is your

19  signature on the document?

20          THE DEFENDANT: Yes.

21          THE COURT: Did someone translate the document for you

22  before you signed it?

23          THE DEFENDANT: Yes.

24          THE COURT: Do you, in fact, wish to give up your

25  right to have Judge Weinstein listen to the plea and permit me

1   to listen to the plea?

2            THE DEFENDANT: Yes.

3            THE COURT: Do you make that decision voluntarily and

4   of your own free will?

5            THE DEFENDANT: Yes.

6            THE COURT: Did anybody threaten you or make any

7   promise to you to induce you to allow me to listen to the plea?

8            THE DEFENDANT: No.  I did it on my own free will.

9            THE COURT: Thank you.  Now, I understand that you're

10  prepared to plead guilty to two criminal offenses.  One of them

11  is contained in a superseding indictment that was filed here in

12  the Eastern District of New York and the other offense is one

13  that was in an indictment filed in the District of Columbia.

14           Let me confirm, first of all, counsel, I'm presuming

15  that you did receive copies of each of these indictments and

16  reviewed those with Mr. --

17           MR. PANZER: Yes.  In fact, we made application under

18  Rule 20 that the D.C. case be transferred to this district.  I

19  believe both U.S. attorneys have consented and --

20           THE COURT: Right.

21           MR. PANZER: -- we're ready to go forward on that.

22           THE COURT: All right.  I haven't seen the file yet,

23  Mr. Norkin.  I'm confident there are -- I presume that the

24  appropriate documents have been filed to permit the D.C.

25  circuit case -- the D.C. district court case, I should say, to

10

1   proceed here.

2           MR. NORKIN: You're correct, Your Honor, and on the

3   ECF system there is, in fact, the Rule 20 order to transfer.

4           THE COURT: Thank you.  Mr. Rodriguez, did you discuss

5   the charges in each of these two indictments with your

6   attorneys?

7           THE DEFENDANT: Yes.

8           THE COURT: Do you understand all of the charges, at

9   least those that are against you, in these two indictments?

10          THE DEFENDANT: Yes.

11          THE COURT: Okay.  Let me focus specifically on the

12  charges that I understand you're prepared to plead guilty to.

13  First, I understand you're willing to plead guilty to Count 2

14  of the indictment here in the Eastern District of New York, and

15  that count charges you with an importation conspiracy.  I'll

16  read it.  It's a short charge.

17          Count 2 charges on or about and between January 1,

18  1996 and June the 6th, 2008, both dates being approximate and

19  inclusive, within the Eastern District of New York and

20  elsewhere the Defendant, Esteban Rodriguez-Olivera, also known

21  as Humberto, La Papa, El Guero and Peligros, together with

22  others did knowingly and intentionally conspire to import a

23  controlled substance into the United States from a place

24  outside thereof, which offense involved five kilograms or more

25  of a substance containing cocaine, a Schedule II controlled

11

1    substance, in violation of United States law.

2            The charge in the Eastern -- excuse me, in the

3    District of Columbia that I understand you're willing to plead

4    guilty to is found in Count 1 of the indictment there, and it

5    is also relatively brief.  I'll read it.

6            Count 1 in the District of Columbia indictment

7    charges you as follows.  From in or about late 2005 and

8    continuing thereafter, up to and including the date of the

9    filing of this indictment, the exact dates being unknown to the

10   Grand Jury, in Mexico, the United States and elsewhere the

11   Defendant, Esteban Rodriguez-Olivera, also known as Peligros

12   and La Papa, did knowingly and unlawfully combine, conspire,

13   confederate and agree together with others, known and unknown

14   to the Grand Jury, to commit the following offenses against the

15   United States.

16           One, to knowingly and intentionally import five

17   kilograms or more of a mixture in substance containing a

18   detectible amount of cocaine, a Schedule II controlled

19   substance, into the United States from Mexico and Peru in

20   violation of United States law and, two, to knowingly and

21   intentionally distribute five kilograms or more of a mixture

22   and substance containing a detectible amount of cocaine, a

23   Schedule II controlled substance, intending and knowing that

24   such substance would be unlawfully imported into the United

25   States in violation of United States law.

12

1        If the Government were required to prove these

2   offenses against you, the Government would have -- at a trial,

3   the Government would have to establish certain essential facts.

4   They're called the elements of each offense, and I'll go over

5   them with you.

6        First of all, the Government would have to establish

7   that there was a conspiracy.  A conspiracy is simply an

8   agreement between two or more people that they will work

9   together to accomplish some criminal purpose.

10       So the Government would have to prove that there was

11  such a conspiracy, and for the charge in the Eastern District

12  of New York, they'd have to prove that the conspiracy existed

13  sometime in the period from January 1, 1996 to June 6th of 2008.

14       For the District of Columbia, the charge the

15  Government would have to prove that the conspiracy there

16  existed sometime beginning in late 2005 and continuing up until

17  the filing of the indictment, which occurred in March of 2007.

18       So in both cases, the Government would have to prove

19  that there was a conspiracy that was in existence in the time

20  periods that are charged in the case.  The Government would

21  have to prove further that you joined into the conspiracy in

22  each of these two indictments at some point during the life of

23  the conspiracy.

24       That is, the Government would not have to prove that

25  you are a member of the conspiracy or that you entered into the

13

1    agreement for the entire period, but they'd have to prove that

2    at some point in the period of time that the conspiracy was in

3    existence you joined into it.  You entered into that agreement.

4           The Government would have to prove that you and the

5    other members of these conspiracies each understood what the

6    purpose of the conspiracies were, and for the conspiracy in the

7    Eastern District, the Government would have to prove that you

8    and the other members of the conspiracy understood that the

9    purpose of your working together would be to import cocaine

10   into the United States from someplace outside the United

11   States, and the Government would further have to prove that the

12   amount of cocaine that you and the others agreed to bring in

13   the United States, the total amount had to be at least five

14   kilograms of cocaine.

15          For the charge in the Eastern -- in the District of

16   Columbia, the Government would have to prove that you and the

17   other members of the conspiracy understood that you'd be doing

18   the same thing in that period of time charged in the District

19   of Columbia.  That is, import at least five kilograms of

20   cocaine into the United States from a place outside the United

21   States.

22          The Government could also prove in the District of

23   Columbia, as an alternative for the conspiracy there that's

24   charged in that indictment, that you understood with your

25   fellow conspirators that you would work together to distribute

14

1    cocaine in places outside the United States, in Mexico and

2    Peru, with the understanding that that cocaine would eventually

3    be imported to the United States.

4            So those are the elements of the offense in these

5    cases.  I had one other thing.  With respect to the Eastern

6    District of New York, the Government would have to prove that

7    in some way your conspiracy had an effect here in the Eastern

8    District of New York, which includes Brooklyn, Queens, Nassau

9    County, Suffolk County and Staten Island.

10           For the District of Columbia case, the Government

11   would have to prove that in some way that conspiracy that's

12   charged there had an impact in the District of Columbia.  So

13   those are the elements of the offenses that the Government

14   would have to prove at a trial in order to prove that you were

15   guilty of each of these offenses.  Is that a satisfactory

16   explanation, Mr. Norkin?

17           MR. NORKIN: Yes, Your Honor.  Just one minor

18   correction for the District of Columbia indictment.  They

19   wouldn't have to prove a nexus to D.C.  They'd just have to

20   prove a nexus to the United States.

21           THE COURT: Is that right?

22           MR. NORKIN: Yes.

23           MR. PANZER: Yes.  That's a statute that covers --

24           THE COURT: Okay.

25           MR. NORKIN: Hence, the extraterritorial jurisdiction.

15

1          THE COURT: All right.  So with that change, I gather

2    for the indictment in the District of Columbia, all the

3    Government would have to prove that it was in some way your

4    conspiracy involved the -- any portion of the United States of

5    America.

6          So did you understand what I explained to you about

7    these charges, Mr. Rodriguez?

8          THE DEFENDANT: Yes.

9          THE COURT: Now you have previously pleaded not guilty

10   to these charges.  You have the right to continue to plead not

11   guilty even if you're guilty.  Do you understand that?

12         THE DEFENDANT: Yes.

13         THE COURT: If you maintained a plea of not guilty to

14   these charges, you'd have the right to a speedy and public

15   trial before a jury on all the charges in the indictments with

16   the assistance of your attorney.  Do you understand that?

17         THE DEFENDANT: Yes.

18         THE COURT: You'd have a right to have an attorney

19   represent you in all proceedings in connection with these

20   charges, and if you could not afford an attorney, the court

21   would appoint an attorney to represent you in all proceedings

22   in connection with the cases.  Do you understand that?

23         THE DEFENDANT: Yes.

24         THE COURT: At a trial, if it was a trial in these

25   charges, you would be presumed to be innocent.  You would not

16

1  have to prove that you were innocent.  You wouldn't have to

2  prove anything.

3        The Government has the burden of proof at a criminal

4  trial, and the Government's burden is to produce evidence in

5  court that satisfies the jury unanimously that the Defendant is

6  guilty beyond a reasonable doubt.

7        If the Government could not satisfy that burden of

8  proof at your trial, the jury would have the duty to find you

9  not guilty.  Do you understand that?

10       THE DEFENDANT: Yes.

11       THE COURT: At a trial, witnesses for the Government

12 would have to come to court and testify in your presence.  Your

13 attorney could cross-examine the witnesses.  He could object to

14 the evidence the Government tried to introduce.  He could offer

15 evidence in your behalf.

16       He could subpoena witnesses and compel witnesses to

17 come to court and testify in your behalf.  Do you understand

18 that?

19       THE DEFENDANT: Yes.

20       THE COURT: At a trial, you would have the right to

21 testify in your own behalf if you chose to testify, but you

22 could not be required to testify.  The choice would be entirely

23 up to you, but that's because the Constitution of the United

24 States guarantees that no defendant may be required to testify

25 and say something that could be used to show that he is guilty.

17

1          So if you chose to have a trial but chose not to

2    testify at the trial, the judge would instruct the jury that

3    they cannot hold that against you.  Do you understand that?

4          THE DEFENDANT: Yes.

5          THE COURT: If you plead guilty instead of going to

6    trial, you will be giving up your right to a trial and all the

7    other rights I've just discussed.  There will be no trial in

8    this case and you'll have no right to appeal to a higher court

9    on the question of whether or not you're guilty.

10         Judge Weinstein will simply enter judgments of guilty

11   and impose sentences on you with respect to both charges based

12   only on the plea of guilty without any trial.  Do you

13   understand that?

14         THE DEFENDANT: Yes.

15         THE COURT: If you plead guilty, I will have to ask

16   you some questions about what you did in connection with the

17   charges.  You will be required to answer the questions and in

18   doing that, you will be giving up the right I mentioned a few

19   moments ago, the right not to say something that can be used to

20   show that you're guilty.  Do you understand that?

21         THE DEFENDANT: Yes.

22         THE COURT: So Mr. Rodriguez, are you willing to give

23   up your right to a trial and all the other rights we've just

24   discussed?

25         THE DEFENDANT: Yes.

18

1          THE COURT: I understand you have an agreement with

2  the Government concerning your plea.  I have a document that

3  appears to be the agreement.  It has today's date on the last

4  page and various signatures, including one that appears to be

5  yours.

6          Let me ask you please to look at the document, and if

7  you recognize it please turn to the last page.  Is that your

8  signature among those on the last page?

9          THE DEFENDANT: Yes.

10          THE COURT: Before you signed the document, did

11  someone translate the document for you?

12          THE DEFENDANT: Yes.

13          THE COURT: Did you discuss the various terms that are

14  set forth in this agreement with your attorney?

15          THE DEFENDANT: Yes.

16          THE COURT: Do you understand absolutely everything

17  that's written in the document?

18          THE DEFENDANT: Yes.

19          THE COURT: Except for any promises in writing in this

20  document, did anyone make any promise to you to induce you to

21  plead guilty?

22          THE DEFENDANT: No.

23          THE COURT: All right.  I'll mark this as Exhibit 1

24  for purposes of today's proceedings.

25  (COURT EXHIBIT 1 MARKED)

1          THE COURT: Let me review with you now the potential

2    punishment for these offenses, and before I do that let me say

3    that in sentencing you, Judge Weinstein will impose a separate

4    sentence on each of the two charges, and then he has to make

5    the further determination about whether to have those sentences

6    run consecutively or concurrently.

7          If he decides that the sentences must run

8    consecutively, then that means that you will first have to

9    complete the sentence on one of the charges before you begin

10   serving the sentence on the other charge.  That's what's known

11   as a consecutive sentence.

12         The other alternative is a concurrent sentence, which

13   means that while you're serving the sentence on one of the

14   charges, you are also serving the sentence on the other charge.

15   Do you understand what I explained about consecutive and

16   concurrent sentences?

17         THE DEFENDANT: Yes.

18         THE COURT: All right.  Now on each of these charges,

19   the court may impose a term of imprisonment of up to life in

20   prison.  Do you understand that?

21         THE DEFENDANT: Yes.

22         THE COURT: On each of the charges, the court is

23   required by law to impose a minimum term of at least ten years

24   of imprisonment.  So do you understand that?

25         THE DEFENDANT: Yes.

1            THE COURT: If the judge chooses, therefore, to impose

2    consecutive sentences, then the mandatory minimum of the

3    sentences would be a minimum of 20 years.  Do you understand

4    that?

5            THE DEFENDANT: Yes.

6            THE COURT: Are there circumstances which would permit

7    the court to ignore the mandatory minimums, Mr. Norkin?

8            MR. NORKIN: Not from the Government's perspective,

9    no.

10           THE COURT: All right.

11           MR. NORKIN: I think defense counsel will have a

12   different opinion, but I offer the Government's position.

13           THE COURT: All right.

14           MR. PANZER: You mean in the plea agreement,

15   Your Honor?

16           THE COURT: Well, I don't think I see anything in the

17   plea agreement.

18           MR. PANZER: There's nothing in the plea agreement.

19           THE COURT: All right.  Very well.  Now, in addition

20   to a term of imprisonment, the court is required to impose a

21   term of supervised release.  The term of supervised release

22   will commence after you complete any term of imprisonment

23   that's imposed, and the term of supervised release must last

24   for a minimum of five years on each count, and could be up to

25   life.

21

1          While you are serving the term of supervised release,

2     you'll be required to comply with conditions that are set by

3     the court.  If you failed to comply with any of the conditions,

4     the court has the option to sentence you to serve more time in

5     prison, and on each occasion when the court finds that you have

6     violated conditions of supervised release, the court may impose

7     an additional term of imprisonment of up to five years without

8     giving you credit for any time previously spent in prison.  Do

9     you understand that?

10          THE DEFENDANT: Yes.

11          THE COURT: On each offense, you may be fined up to $4

12     million.  Separate from the fine, the court must impose a

13     special assessment of $100.00 on each of the two offenses, and

14     that is part of the sentence that must be consecutive.  That

15     is, there'll be a total of $200.00 of special assessments.

16          Finally, as a financial consequence of your sentence,

17     the court will impose a forfeiture order of $50 million, which

18     requires that you give up your right to $50 million, and that

19     is provided for in your plea agreement.

20          Now I understand that this would be in the form of a

21     judgment that would be entered against you, and that the

22     Government will seek to obtain funds that are now, in some way,

23     already under an order that they be frozen.

24          Is that correct, Mr. Norkin?  Is there some fund --

25     are there some funds that are already subject to the court's

22

1    jurisdiction?

2            MR. NORKIN: There's -- it depends on whether assets

3    are in the United States or not.  There is a preliminary order

4    of forfeiture that's a routine course as we approach sentencing

5    so that if there are funds that are found in the United States,

6    they can be frozen.

7            My understanding is, to date, we have not identified

8    funds in the United States but that is something that could

9    change as we approach sentencing.

10            THE COURT: All right.

11            MR. PANZER: I just want to clarify the funds have to

12    be within the jurisdiction of the United States because I

13    believe the treaty between Mexico and the United States

14    excludes property that is owned in Mexico.

15            THE COURT: All right.  Well, I don't know what the --

16    all the ramifications are, and you may be right about that but

17    if you're not, then there's still a judgment that would be

18    entered that the Government here could pursue in terms of

19    locating money or other assets up to $50 million that

20    Mr. Rodriguez owns or possesses, and obtain those funds and

21    turn them over to the Government.

22            So that's what the forfeiture order is.  Do you

23    understand what I explained about the fine, the assessment and

24    the forfeiture order, Mr. Rodriguez?

25            THE DEFENDANT: Yes.

23

1          THE COURT: Finally, upon conviction for these

2    offenses, you are subject to deportation, or removal as it's

3    now called, which means that you can be expelled from the

4    United States and returned to your country of citizenship or

5    national origin.  Do you understand that?

6          THE DEFENDANT: Yes.

7          THE COURT: In sentencing you, Judge Weinstein will be

8    required to consider some guidelines that are called the

9    sentencing guidelines, and those guidelines may have an effect

10   on the decision he makes with respect to your sentence.  Did

11   you have a discussion about the sentencing guidelines with your

12   attorney?

13         THE DEFENDANT: Yes.

14         THE COURT: All right.  I'll go over the matter

15   briefly.  Before you are sentenced, Judge Weinstein will

16   consider various factors, various facts, concerning your role

17   in committing these offenses, what you did, and other factors

18   relating to the offense -- the offenses I should say, and then

19   make a determination about the guideline level that applies to

20   your sentence.

21         The guideline level that's determined in that fashion

22   will prescribe a range of months, and it is the recommendation

23   of the guidelines that your sentence of imprisonment falls

24   somewhere within that range that is prescribed by the

25   guideline.

1          Judge Weinstein is not required to follow that

2    recommendation, however.  In fact, he has other laws that he

3    has to consult and considerations that are set forth in other

4    laws that he has to consider in making a determination about

5    the sentence, and in making a determination about whether to

6    accept the recommendation of the guidelines or sentence you to

7    some -- impose some sentence that is either higher than what

8    the guideline recommends or lower than what the guideline

9    recommends.

10          But Judge Weinstein must establish what the guideline

11   is and then consider carefully whether to sentence you within

12   the recommendation.  Whatever sentence he imposes, Judge

13   Weinstein has to articulate sound reasons for the sentencing

14   decision.

15          Now did you understand what I explained about the

16   guidelines?

17          THE DEFENDANT: Yes.

18          THE COURT: Now once you are sentenced you do have a

19   right to appeal your sentence, but only your sentence, to a

20   higher court if you think that this court has made some mistake

21   in sentencing you.  There is a limitation on the right to

22   appeal, however, it appears.

23          Before I get to that, let me ask counsel to tell me

24   what they think the guidelines are likely to say in this case,

25   but understand, Mr. Rodriguez, this is just an estimate by the

25

1   attorneys.  It's not binding on the court.  Mr. Norkin?

2              MR. NORKIN: Your Honor, based on the amount of

3   narcotics, we would start with a base offense level of 38,

4   which is the corresponding level for 150 kilograms of cocaine

5   or more.

6              The Government views Mr. Rodriguez as having an

7   aggravating role, so we would increase that by four points.

8   Because Mr. Rodriguez is pleading guilty, and is doing so in a

9   timely manner and accepting responsibility, that would subtract

10  three points, and that brings us to a total of 39.

11             The corresponding guidelines range for a level 39

12  with Mr. Rodriguez's criminal history category of 1 is 262 to

13  327 months.

14             THE COURT: Mr. Panzer, you have any -- what is your

15  guideline calculation?

16             MR. PANZER: Well, I explained what the Government

17  estimates was of the guideline, and I indicate them --

18  indicated to him the range of sentence that the judge could

19  consider in sentencing him, and he understands that.

20             THE COURT: All right.  Did you have a different

21  guideline calculation that --

22             MR. PANZER: Not at this point, no.

23             THE COURT: Okay.  Mr. Rodriguez, I want to point out

24  one thing about the guidelines and the calculation of the

25  guidelines in this case, and that is this.  In a narcotics case

26

1   like this, one of the principal factors in determining what the

2   guideline level is for the case is the weight of the narcotics

3   that are involved.

4          And you have agreed here in your plea agreement that

5   the weight involved in your case is at least 150 kilograms of

6   cocaine, and that means that you'll have to accept that fact

7   and whatever impact that fact has on the calculation of the

8   guideline for your case.  Do you understand that?

9          THE DEFENDANT: Yes.

10         THE COURT: All right.  Now, as I've mentioned a

11  moment ago, you do have the right to appeal your sentence, but

12  only your sentence, to a higher court if you think that this

13  court made a mistake when sentencing you, but you've also given

14  up your right to appeal to a certain extent.

15         Specifically, you've agreed that if your sentence of

16  imprisonment here is 365 months or less, then you cannot appeal

17  your sentence.  You'll have to accept it even if you think the

18  court made a mistake.  Do you understand that?

19         THE DEFENDANT: Yes.

20         THE COURT: Do you have any questions you'd like to

21  ask me about the charges or about your rights or about anything

22  else related the case that's not clear to you?

23         THE DEFENDANT: No.  Everything is fine.

24         THE COURT: Anything else I should review with your

25  client, Mr. Panzer, before proceeding to the --

27

1          MR. PANZER: Your Honor's been complete and covered

2   all the bases.

3          THE COURT: Mr. Norkin?

4          MR. NORKIN: I agree with Mr. Panzer, Your Honor.

5          THE COURT: All right.  Mr. Panzer, do you know any

6   reason why Mr. Rodriguez should not plead guilty to the

7   offenses?

8          MR. PANZER: No.  We've reviewed the case with him

9   extensively, had many conversations, had full discovery in this

10  case.  We know what the case is about.  We've discussed that,

11  and given all those circumstances we have advised him to take

12  the plea.

13         THE COURT: Okay, and you see no reason why he should

14  not?

15         MR. PANZER: I see no reason why he should not.

16         THE COURT: Do you know of any viable legal, and I'm

17  distinguishing that from factual, defense to the charge --

18         MR. PANZER: No.

19         THE COURT: -- to the charges?

20         MR. PANZER: No.

21         THE COURT: Mr. Rodriguez, are you ready to plead?

22         THE DEFENDANT: Yes.

23         THE COURT: How do you plead to the charge in Count 2

24  of the superseding indictment from the Eastern District of New

25  York, guilty or not guilty?

28

1             THE DEFENDANT: Guilty.

2             THE COURT: How do you plead to the charge in Count 1

3    of the indictment from the District of Columbia, guilty or not

4    guilty?

5             THE DEFENDANT: Guilty.

6             THE COURT: Are you making these pleas of guilty

7    voluntarily and of your own free will?

8             THE DEFENDANT: Yes.

9             THE COURT: Did anybody threaten you or force you to

10   plead guilty?

11            THE DEFENDANT: No.

12            THE COURT: Other than your agreement with the

13   Government that we discussed earlier, did anyone make any

14   promise to you that caused you to plead guilty?

15            THE DEFENDANT: No.

16            THE COURT: Has anyone made any promise to you about

17   the sentence you will receive?

18            THE DEFENDANT: No.

19            THE COURT: All right.  I do want to emphasize that

20   Judge Weinstein, and Judge Weinstein alone, will be making the

21   decision about your sentence, and he will not make that

22   decision until literally the day that you are sentenced.

23            So no one can tell you now what sentence you will

24   receive in this case.  I presume that's clear.

25            THE DEFENDANT: Yes.

1          THE COURT: Can you tell me briefly, in your own

2    words, what you did in connection with these offenses that

3    makes you guilty of the offenses?

4          THE DEFENDANT: I came to an agreement with other

5    people to import to the United States and to the Eastern

6    District of New York, between the years of 2000 and 2008, 150

7    kilos of cocaine and more.

8          THE COURT: Is there anything else about which I

9    should inquire, Mr. Norkin?

10         MR. NORKIN: No, Your Honor.  It was succinct but it

11   did hit all the elements.

12         THE COURT: I thought so, as well.  Mr. Panzer?

13         MR. PANZER: No.  I think we've covered the plea.

14   It's voluntary.

15         THE COURT: Yes.  I agree.  Based on the information

16   provided today, I find that Mr. Rodriguez is acting

17   voluntarily, that he fully understands the charges, his rights

18   and the consequences of his pleas.

19         There is a factual basis for his pleas of guilty to

20   the two offenses, and therefore I recommend that Judge

21   Weinstein accept Mr. Rodriguez's pleas of guilty to the

22   charges.  Did Judge Weinstein set a date for sentencing,

23   Mr. Toritto?

24         THE CLERK: Yes, Your Honor.  It's currently scheduled

25   for February 21st at 10:00 a.m.

30

1          MR. PANZER: I might say we're going to write a letter

2   to Judge Weinstein, so Your Honor knows, extending the time of

3   sentence.

4          THE COURT: All right.  Well, that's certainly your

5   right to do.  I don't have any control over that.  So before

6   you are sentenced, Mr. Rodriguez, the Probation Department of

7   the court will conduct a pre-sentence investigation and prepare

8   a pre-sentence report.

9          You will receive copies of the -- a copy of the

10  report, as well your attorney and the attorney for the

11  Government.  In order to prepare that report, a probation

12  officer will interview you.  You have the right to have your

13  attorney present during that interview.

14         You should keep in mind that the interview is

15  typically the primary way that the court learns about a

16  defendant's background and other personal circumstances so that

17  those matters can be considered at the time of sentence.

18         You should, of course, listen to your attorney's

19  advice with respect to that, and that is -- it is usually in

20  your interest to cooperate with the probation officer, but you

21  should listen to your attorney's advice.  Is there any other

22  matter to --

23         MR. PANZER: I just want to --

24         THE COURT: -- address today?

25         MR. PANZER: -- make sure I have the date.  February

31

1   6th, 2013 is the date?

2           THE CLERK: 21st.

3           MR. SANTANGELO: 21st.

4           MR. PANZER: February 21st, 2013.  Okay.  Thank you.

5           THE COURT: At what time?

6           THE CLERK: 10:00 a.m.

7           THE COURT: At 10:00 a.m.  Okay.  Is there any other

8    matter to address today, counsel, before we adjourn?

9           MR. PANZER: I don't believe so.

10          MR. NORKIN: No, Your Honor.

11          THE COURT: All right.  Then we are adjourned.  Thank

12   you.  I'll return to counsel for the Government a plea

13   agreement that's been marked to be maintained for any further

14   proceedings where it may be necessary.

15          MR. NORKIN: Thank you.  Thank you, Judge.

16   (Proceedings concluded at 4:00 p.m.)

17                          *  *  *  *  *

18

19

20

21

22

23

24

25

32

1        I certify that the foregoing is a court transcript from an

2   electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5   _____

6                              Lisa M. Smith

7   Dated:  November 29, 2012

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25